George M. Osborn, Appellee, v. William J. Thorp and Elva A. Thorp, Appellants.

Gen. No. 39,949.

Opinion filed January 11, 1939. Rehearing denied February 6, 1939.

PEDEN, MELANIPHY, RYAN & ANDRÉAS, of Chicago, for appellants; JOHN C. MELANIPHY and GERALD RYAN, of counsel.

JAMES R. PHILLIPS and J. J. GOSHKIN, both of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Suit was brought in assumpsit by the plaintiff, George M. Osborn, on July 2, 1937, against the defendants, William J. and Elva A. Thorp. The action was based on two bonds for $500 each, being a part of a bond issue executed by defendant. Judgment was entered for plaintiff in the sum of $1,408.34 and costs upon a finding by the court without a jury, after the court had stricken the answer (except paragraphs 1 and 2 thereof) of the defendants, upon which answer the defendants elected to stand. The judgment is based upon the pleadings which consisted of the complaint, the answer and the plaintiff's motion to strike the answer with the exception of paragraphs 1 and 2 thereof.

Paragraph 1 admitted the execution of the bonds in question and paragraph 2 demanded proof of ownership and damages. The defense claimed by defendants is contained in paragraphs 3 to 15, inclusive. Proof as to the ownership and amount of the damages were made and appear in the report of the proceedings. No question is raised thereon. That portion of the answer which was stricken by the court was, in terms, the real defense of the defendant herein.

The complaint alleges that the plaintiff is the owner of the two bonds in question; that they were executed by the defendants; that plaintiff purchased them for value; that default was made in the payment of interest on September 1, 1931, and he asks judgment.

The answer of the defendants alleges that as owners of certain real estate therein described, they executed a trust deed to the Chicago Title & Trust Company, as trustee, dated March 1, 1928, to secure the payment of 78 first mortgage bonds, aggregating $40,000, among which are the bonds mentioned in the complaint; that this indebtedness had been reduced to $37,000 and that on May 16, 1932, the defendants conveyed the said real estate to the Thorp Garage, Inc., an Illinois corporation, and on June 17, 1935 the Chicago Title & Trust Co., as trustee, filed foreclosure proceedings in the circuit court of Cook county; that thereafter on October 2, 1935 certain creditors filed an involuntary proceeding in the United States District Court, at Chicago, against the Thorp Garage, Inc., seeking to effect a reorganization, pursuant to the provisions of the Bankruptcy Act; that various proceedings were had therein, including the filing and proving of claims.

The answer further alleges that the plaintiff George M. Osborn filed his claim on said bonds, which claim was allowed by the referee in bankruptcy and was approved by the court; that a plan of reorganization was proposed by the committee for the protection of the bondholders, which plan, as amended, was approved by the district court.

The decree of the district court, entered on April 20, 1936, approved a plan of reorganization of said Thorp Garage, Inc., which provided for the organization of a new corporation with an authorized capital of 370 shares of common stock; that the new corporation acquire the title to the real estate; that the shares of stock be issued to three trustees appointed under said

decree, for the benefit of the holders of certificates of beneficial interest, which certificates were to issue to the various holders of said bonds.

The decree further found that there was a full compliance with sections 77A and 77B of the Bankruptcy Acts; that the necessary acceptances by creditors holding in excess of two-thirds in amount of all bonds had been filed. It was further decreed *inter alia,* (1) that the foreclosure proceedings pending in the circuit court be permanently restrained; (2) that the plan of reorganization shall be binding upon all creditors of the debtor, secured or unsecured, whether or not they had accepted or approved the plan, as well as on the Chicago Title & Trust Co., as trustee under said trust deed; (3) that all the property and assets of the Thorp Garage, Inc. be conveyed and transferred to a new corporation to be organized; (4) that the bonds secured by said trust deed be canceled and the trust deed released; (5) that ''all first mortgage notes and interest notes outstanding thereunder, to be void and of no further force or effect, except as a medium of exchange for the new securities to be issued under and pursuant to said Plan of Reorganization.''

That pursuant to said decree the special master on June 27, 1936 executed and delivered release deed, releasing the lien of said trust deed, which release deed was recorded on July 8, 1936 in the recorder's office of Cook county.

That a new corporation was organized under the laws of Illinois, known as the South Park Garage, and it succeeded in title to the real estate in question.

That in pursuance of said plan of reorganization and decree, the trustees executed a trust certificate in the South Park Garage, certifying that George M. Osborn is the owner of ten units of beneficial interest, which certificate was tendered to the plaintiff and is now held by said trustees for his use and benefit, ready to be

delivered to him at his request which certificate is in full satisfaction of his claim so filed in the district court and in his said bonds.

That the district court approved all acts and things done in carrying out the plan of reorganization on August 20, 1936.

To the foregoing answer the plaintiff filed a motion to strike, alleging that the provisions of the plan of reorganization do not constitute a discharge to or effect the liability of, the defendants, upon the bonds sued on in this cause.

Plaintiff's theory is that the district court had no jurisdiction to decree the cancellation of the bonds or in any manner affect his rights against the defendants as makers of the bonds.

Defendants' theory and the error relied on by them is:

1st. That the Federal District Court had jurisdiction of the parties and the subject matter;

2nd. That the decree is a final decree, no appeal having been taken therefrom, and is binding on the plaintiff and all bondholders;

3rd. That the trial court could not review the judgment and decree of the Federal District Court, even if its decree was erroneous; and

4th. That the court erred in sustaining plaintiff's motion to strike defendants' answer.

The Bankruptcy Act, as amended and approved June 7, 1934, provided, *inter alia,* as follows:

"Sec. 77-A. In addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in Section 77-B of this Act."

Section 77B (a) provides for the filing of the petition, its requirements and the mode of determining the

good faith of the proceedings. Subparagraph (b) of this section contains the following pertinent provisions:

"(b) A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise. . . .

"(9) shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation, . . . the satisfaction or modification of liens, indentures or other similar instruments, . . . and the issuance of securities of either the debtor or any such corporation or corporations, for cash, or in exchange for existing securities, or in satisfaction of claims or rights, or for other appropriate purposes."

Subparagraph (c) provides for the appointment of trustees; the giving of notice of creditors; the filing of schedules and claims; the determination of classification of claims; the manner of proposing a plan of reorganization by the debtor, including the time for filing the same and hearing thereon. Subparagraph (d) provides for the proposal of a plan by creditors. Subparagraph (e)—(1) provides that a plan of reorganization shall not be confirmed until it has been accepted in writing by creditors holding two-thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan. Subparagraph (f) provides for the approval of the plan if it (1) is fair and equitable and does not discriminate unfairly in favor of any class of creditors and is feasible; (2) it complies with the act; (3) it has been accepted as required by the provisions of subdivision (e) and clause (1) of this section.

Subparagraph (g) provides:

"Upon such confirmation, the provisions of the plan and of the order of confirmation shall be binding upon (1) the debtor, (2) all stockholders thereof, including those who have not, as well as those who have, accepted it, and (3) all creditors, secured or unsecured, whether or not affected by the plan, and whether or not their claims shall have been filed, and if filed, whether or not approved, including creditors who have not, as well as those who have, accepted it."

Subparagraph (h) provides for the carrying out of the plan; the making of the conveyances, and the entry of a final decree which shall discharge the debtor from its debts and liabilities.

Subparagraph (i) deals with receivers and trustees.

Subparagraph (j) provides:

"A certified copy of the final decree or of an order confirming a plan of reorganization, or of any other decree or order entered in a proceeding under this Section shall be evidence of the jurisdiction of the court, the regularity of the proceedings and the fact that the decree or order was made."

It appears from the evidence that plaintiff filed his claim and it was allowed. The claim was based upon the bonds sued on in the case at bar. The new corporation organized under the plan of reorganization, South Park Garage, succeeded to all the property of the old corporation, Thorp Garage, Inc., which was discharged of all its debts. The Chicago Title & Trust Co., as trustee, under the trust deed given to secure the bonds, some of which plaintiff holds, was permanently restrained from prosecuting the foreclosure proceedings.

Pursuant to the decree, the trust deed securing the bonds in question was released of record and canceled "and is of no force and effect, and said first mortgage bonds and interest coupons attached thereto,

secured thereby, are fully satisfied, canceled and of no force and effect.''

The decree also provided that the bonds secured by said first mortgage trust deed are ''decreed to be canceled and of no effect, except as a medium of exchange.''

No appeal was taken from this decree.

The answer further avers that beneficial certificate No. 1 for ten units was executed by the trustees of the South Park Garage, the new corporation, and was tendered to the plaintiff by said trustees and that said trustees hold said certificate for his use and benefit.

The motion of the plaintiff to strike the answer of defendants, of course, admitted all the facts pleaded in the answer. Therefore, the question to be determined at this time is: Did the decree of the United States District Court dispose of all claim of the plaintiff including its personal, common law liability as maker of the paper?

A somewhat similar case was before this court in *Barnett v. Gitlitz*, 290 Ill. App. 212. In that case a judgment by confession was rendered upon two bonds signed by the defendants and recovery was had for the sum of $823.51, and the defendant in apt time filed a motion to vacate the judgment, or in the alternative that the court satisfy of record the judgment and a verified petition in support of the motion. Plaintiff filed a motion to strike defendants' amended petition from the files. The court entered an order ''overruling motion of defendants to vacate the judgment.'' The petition which was stricken from the files set up the fact that the notes and the trust deed which they secured, had been in foreclosure in the superior court and that all the bonds under said trust deed aggregated $120,000, and that pursuant to a decree of foreclosure and a decretal judgment which was executed against all the defendants for the sum of $130,258.81 and costs

in favor of the Chicago Title & Trust Company, as successor trustee, for the use and benefit of all the owners and holders of the bonds secured by the trust deed aforesaid of which the bond upon which that judgment was predicated was one.

The petition in the *Barnett* case further set up that after the rendition of said decree in the superior court, aforesaid, the De Luxe Court Apartments, Inc., a corporation, being then and there the owner of the title to the premises securing the trust deed and the bonds aforesaid, of which the bond of plaintiff was one, filed its petition for reorganization under sections 77A and 77B of the Bankruptcy Act, as amended, in the District Court of the United States for the Northern District of Illinois, Eastern Division, and proceedings were had thereunder to the extent that on March 2, 1936, a decree was entered in the United States District Court approving the plan of reorganization provided in said decree, and ordering that the decree entered in the superior court of Cook county in the foreclosure proceeding be satisfied in full, and that the trust deed securing the bonds, of which the bond of plaintiff is one, be released and declared canceled, null and void and that the bonds secured thereby be canceled and exchanged for the new certificates of the De Luxe Court Apartments, Inc., a corporation, as provided in said plan.

The petitioners in the *Barnett* case then set up that pursuant to said decree entered in the United States District Court for the Northern District of Illinois, there was executed a satisfaction of judgment, satisfying in full the decree in the superior court of Cook county for $130,258.81, which was entered on July 14, 1934, which satisfaction was filed of record in the office of the clerk of the superior court of Cook county, and the said special master did execute a release of the trust deed recorded as Document No. 10183360, which

release was filed of record in the office of the recorder of deeds of Cook county, Illinois on March 31, 1936.

Petitioners in the *Barnett* case conclude by asking that the court after vacating the judgment entered in the municipal court by confession, or in the alternative, that the court satisfy of record said judgment entered therein. In determining that question, this court said:

"This appeal raises the following question: Where the United States District court, under its bankruptcy powers, and particularly under section 77B of the Bankruptcy Act, has, in a reorganization proceeding pending in that court, ordered a satisfaction of the decree entered in the superior court case (which decree found that there was due complainant in that case as successor trustee, for and on behalf of *all* of the bondholders, the sum of $118,628.19, and that the defendants Morris Gitlitz and Mary Gitlitz, his wife, Gus Bagan and Sadie Bagan, his wife, and Dora Gitlitz, a widow, were personally liable for that amount), and also ordered the release of the trust deed securing the bonds, and the decree of the superior court has been satisfied and released in accordance with said order, is plaintiff, who confessed judgment in the municipal court while the proceedings in the United States District court were pending, entitled to have his judgment in the municipal court remain in full force and effect, where the amount of the stock he is entitled to under the decree of the United States District court is tendered to him? It is unnecessary for us to state the scope and purpose of section 77B of the Bankruptcy Act. By an order of the United States District court the debt due on *all* the bonds secured by the trust deed was satisfied. To sustain the position of plaintiff it would be necessary to ignore the provisions of a law of the United States and the orders and decree of the United States District court. If plaintiff is right, a minority of the bondholders can prevent the

United States District court from functioning under section 77B. It is our duty and desire to give full force and effect to the laws of the United States and the orders and decree of the United States District court. Defendants' motion in the municipal court, in the alternative, was in the nature of a writ of *audita querela,* and under the admitted facts the trial court should have compelled an entry of satisfaction of the judgment in the municipal court. (See *Harding v. Hawkins,* 141 Ill. 572).

". . .

"The judgment order of the municipal court of Chicago appealed from is reversed, and the cause is remanded with directions to the trial court to cause a satisfaction of the original judgment to be entered. Should plaintiff refuse to accept the stock tendered, the court may order it deposited with the clerk of the court, and with the right in plaintiff to claim it."

A very recent case entitled *Gottlieb v. Crowe and Stoll,* 289 Ill. App. 595, which was later decided by the Supreme Court of the United States at the October term 1938, and which is entitled, *J. O. Stoll v. William Gottlieb,* is very much in point with the case at bar. The various opinions written in that case during its progress through the courts are very interesting and informative. The suit originated in the municipal court of Chicago when William Gottlieb sued the defendants S. A. Crowe, Jr. and J. O. Stoll as guarantors of 3 bonds of $500 each. Crowe was served with process and did not enter his appearance. A judgment was entered against Stoll for the sum of $1,583, the amount of his claim. A trial was had before the court without a jury. In that case the "Ten Fifteen North Clark Building Corporation" issued its construction bonds aggregating $250,000. Some years afterward the building corporation was financially embarrassed and filed its proceeding in the District Court of the United

States for the Northern District of Illinois, Eastern Division, under 77B of the Bankruptcy Act, as amended. November 26, 1934, the United States District Court entered a decree confirming a plan of reorganization of the property. The decree found the plan of reorganization filed by the debtor had been referred to a special master; that the court considered the report of the master and the petition for confirmation of the plan and found that the petition of the debtor was filed June 20, 1934, pursuant to the provisions of section 77B of the Bankruptcy Act and upon a hearing notice was given to all creditors and stockholders of the debtor by publication and by mail, and the special master found that the plan was fair and equitable and that "It complies with the provisions of subdivision (b) Section 77-B of the Bankruptcy Act."

Thereafter, on June 20, 1934, the court found in the *Gottlieb* case that the plan for reorganization had been accepted in writing by more than two-thirds of a certain class of its creditors and more than a majority of another class of creditors; that no objections were made to the plan, and it was ordered and decreed that the report of the special master be approved; that the plan and order of confirmation be binding upon the debtor, all stockholders and "all creditors, secured or unsecured, whether or not affected by the Plan, and whether or not their claims shall have been filed, and if filed, whether or not approved, including creditors who have not, as well as those who have accepted." The plan provided for the organization of a new corporation and that for each $100 of first mortgage bonds issued by the debtor there be issued to the owners one share of common stock in the new corporation known as the Olympic Hotel Building Corporation. The plan further provided for the payment of certain overdue interest to the bondholders, and that "the personal guaranty of J. O. Stoll and

S. A. Crowe, Jr., of said First Mortgage 6½% Gold Bonds shall be cancelled and surrendered in consideration of the transfer of all the assets of said Debtor to the Olympic Hotel Corporation and the surrender of the said Common Stock of the Debtor.''

In deciding this case this court said:

''Counsel for plaintiff contend that the District Court was without authority to cancel the guaranty and therefore the judgment of that court is not *res adjudicata*. The District Court expressly found that the debtor had complied with all the provisions of section 77-B of the Bankruptcy Act and construed the Bankruptcy Law as authorizing the cancellation of the guaranty. That court on two occasions expressly passed on this question, viz., when creditors of the same class raised the question as above stated, and afterward when plaintiff in the instant case again raised the question. The question was there squarely put in issue and if plaintiff or the other creditors were dissatisfied with the decision of the District Judge they should have appealed from his decision to the United States Circuit Court of Appeals, where they probably would have obtained relief. *In re Diversey Bldg. Corp.*, 86 F. (2d) 456. Plaintiff cannot now complain. *Chamblin v. Chamblin*, 362 Ill. 588.''

This *Gottlieb* case then went to the Supreme Court of Illinois, where it appears in Vol. 368 Ill. at page 88 under the title, *William Gottlieb, Appellant, v. S. A. Crowe, Jr., et al. (J. O. Stoll, Appellee)*. In that case the Supreme Court of Illinois reversed this court, which case is cited by appellee in the instant case. The court therein said:

''In the case before us the district court did not have jurisdiction of the subject matter of the guaranty and its order in that respect is void and subject to collateral attack. (*Demilly v. Grosrenaud*, 201 Ill. 272; *O'Connor v. Board of Trustees*, 247 id. 54; *Rabbitt v. Weber & Co.*, 297 id. 491; *Ashlock v. Ashlock*, 360 id.

115). Jurisdiction of the subject matter cannot be conferred by consent, is not waived by appearance and may be raised at any time. *Town of Kingston v. Anderson*, 300 Ill. 577; *Rabbitt v. Weber & Co., supra.*"

This cause was then taken to the Supreme Court of the United States where it appeared under the title, *Stoll v. Gottlieb*, 59 Sup. Ct. 134. The opinion in that case was written by Mr. Justice Reed, in which opinion the decision of the Supreme Court of Illinois was reversed. The court therein stated:

"Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first. . . . 'Having litigated a question in one competent tribunal and been defeated, can she litigate the same question in another tribunal acting independently and having no appellate jurisdiction? The question is not whether the judgment of the supreme court would be conclusive as to the question involved in another action between other parties, but whether it is not binding between the same parties in that or any other forum.' "

So, following the opinion of the United States Supreme Court, we are constrained to hold in the instant case that the court committed error in striking the answer of the defendants. While it may appear that a guarantor or the maker of paper may be released from his common law liability in a bankruptcy court under a plan of reorganization without giving up any of his property, which would be contrary to the decision of the State court, yet that is a matter wherein

jurisdiction of the subject matter has been given to the United States District Court, and if an interested party is not satisfied with the decision of the United States District Court, his privilege is to appeal therefrom if he so desires and not attempt to present the question for decision in a court other than a court of review.

For the reasons herein given the judgment of the superior court is reversed.

*Judgment reversed.*

HALL, P. J., and HEBEL, J., concur.